IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                    Criminal No. 3:10cr21-02

OMAR DIAZ-RIOS


### MEMORANDUM OPINION

This matter is before the Court on the defendant's *pro se* Motion for Compassionate Release (ECF No. 199) (the "*Pro Se* Motion"), the SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR SENTENCE REDUCTION PURSUANT TO § 603(b) OF THE FIRST STEP ACT AND 18 U.S.C. §§ 3582(c)(1)(A) (ECF No. 208) (the "Counsel Motion"), the United States' Response in Opposition to Defendant's Motion for Compassionate Release (ECF No. 217), and the REPLY IN SUPPORT OF MOTION FOR SENTENCE REDUCTION PURSUANT TO § 603(b) OF THE FIRST STEP ACT AND 18 U.S.C. §§ 3582(c)(1)(A) & (c)(2) (ECF No. 218). For the reasons set forth below, the *Pro Se* Motion (ECF No. 199) and the Counsel Motion (EcF No. 208) will be denied.

### BACKGROUND

On January 19, 2010, Diaz-Rios and Luis Arias-Bustamante were indicted for the offense of attempting to possess with intent to distribute five kilograms or more of cocaine hydrochloride, in

violation of 21 U.S.C. § 846. On May 12, 2010, pursuant to a plea agreement, Diaz-Rios pled guilty to that count.

The record reflects that, in October 2009, law enforcement officials, using a confidential source, arranged for the sale of five kilograms of cocaine hydrochloride to Diaz-Rios at a price of $29,500 per kilogram, a total of $147,500.00. Diaz-Rios had previously delivered to Mendoza's residence two kilograms of cocaine hydrochloride. Diaz-Rios' confederates, Arturo Mendoza and Luis Arias-Bustamante, appeared at the pre-determined location in the possession of $147,500.00 to pay for the cocaine. A search of Mendoza's residence produced $3,000.00 and $6,000.00 of United States currency in different locations. For purposes of sentencing, Diaz-Rios was held accountable for money considered to be drug proceeds (a total of $147,520.00 plus $9,600.00 equaling $157,120.00) as well as the five kilograms of cocaine hydrochloride that was attempted to be possessed. Applying the agreed upon price of $29,500.00 per kilogram of cocaine hydrochloride, the Presentence Report held Diaz-Rios accountable for 10.3 kilograms of cocaine hydrochloride for relevant conduct purposes.

Diaz-Rios has an extensive criminal history of drug dealing. In 2000, he was convicted of five drug related offenses involving the maintenance of a facility for storing marijuana; conspiracy to sell between 10 and 50 pounds of marijuana; trafficking 11 pounds

2

of marijuana; and possessing cocaine.  All those charges were consolidated into the trafficking 11 pounds of marijuana charge and Diaz-Rios was sentenced to confinement of 25 to 30 months in prison.  However, the sentence was suspended and he was sentenced to 48 months intensive probation.  Also in 2000, Diaz-Rios was convicted of trafficking between 10 and 50 pounds of marijuana and sentenced to 25 to 30 months in prison.  Again, the sentence was suspended with 36 months intensive probation.  In 2005, Diaz-Rios was convicted of trafficking more than 400 grams of cocaine, conspiring to traffic in more than 400 grams of cocaine, and sentenced to 35 to 42 months in prison, with the sentence again suspended and 36 months unsupervised probation.  In 2010, Diaz-Rios was convicted of illegal re-entry after being convicted of an aggravated felony.  He was sentenced to 24 months in prison and two years of supervised release.

Because of his previous convictions, Diaz-Rios' criminal history category was IV.  However, because he was characterized as a career offender, the criminal history category was increased to VI.  The statutory maximum punishment at the time of sentencing was ten years to life imprisonment.  The total offense level was 34 and the criminal history category was VI.  So, the guideline range was 262 to 327 months.

3

On August 20, 2010, Diaz-Rios was sentenced for the offense of conviction (attempt to possess with the intent to distribute five kilograms or more of cocaine hydrochloride, in violation of 21 U.S.C. § 846) to a term of imprisonment of 327 months, the maximum guideline sentence.

On August 13, 2020, the Court denied Diaz-Rios' previous motion for compassionate release which was based on the presence of COVID-19 (ECF No. 158). The Court also held that, even if Diaz-Rios had established extraordinary and compelling reasons for compassionate release, application of the sentencing factors under 18 U.S.C. § 3553(a) would foreclose relief. Id. That decision was affirmed in United States v. Diaz-Rios, 857 F. App'x 114 (4th Cir. 2021) (ECF No. 189).

Approximately five months later, on April 19, 2022, Diaz-Rios filed, pro se, the pending Motion for Compassionate Release (ECF No. 199).[1] In the Pro Se Motion, he also alleges that he is at risk because of the mutation of the COVID-19 virus. Secondly, Diaz-Rios alleges that his facility of confinement, FCI Gilmore,

---

[1] It appears from the records that Diaz-Rios filed an administrative request with the Bureau of Prisons asserting that he was no longer a career offender and pressing the administrative shortcomings in managing the pandemic as reasons why compassionate release should be granted. (ECF No. 208, Ex. A). The record reflects no response from the Warden and 30 days have passed since he submitted the form to the Warden in early January 2022.

is incapable of protecting him from COVID-19.  In support of that contention, he refers to conditions in 2020 and to early 2021. Lastly, he asserts that, based on United States v. Norman, 935 F.3d 232 (4th Cir. 2019), his offense of conviction does not meet the definition of a controlled substance offense as defined in the guidelines and that, therefore, he cannot be sentenced as a career offender.

In the Counsel Motion, Diaz-Rios argues that he could not be sentenced as a career offender today and, therefore, there would be a dramatic difference in how his case would be assessed under the guidelines today.  The Counsel Motion relies principally on the decision of the United States Court of Appeals for the Fourth Circuit in United States v. Campbell, 22 F.4th 438 (4th Cir. 2022) which holds that an attempt defense does not trigger the sentencing guidelines career offender enhancement.  The Counsel Motion also cites the decision in United States v. Norman to make the point that a drug conspiracy (the offense of conviction here) is not categorically a controlled substance offense within the meaning of the career offender guidelines.

The Counsel Motion is somewhat confusing in identifying the basis for the relief sought.  However, the Counsel Motion summarizes its arguments for extraordinary and compelling reasons for compassionate release to be that:  (1) Diaz-Rios is serving a

5

sentence longer than that which would be imposed today; and (2) the disparity is so dramatic as to render the sentence not "necessary." Put another way, the theory is that the <u>disparity alone</u> constitutes extraordinary and compelling reasons for relief under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A). To those grounds, the Counsel Motion adds three factors: (1) the difficult prison conditions resulting from the pandemic; (2) his "clear conduct for the past 29 months;" and (3) he will be deported upon completion of his sentence. It is against this background that the *Pro Se* Motion and the Counsel Motion will be considered. For the reasons set forth below, both will be denied.

## DISCUSSION

The applicable statute, 18 U.S.C. § 3582(c)(1)(A), provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that 'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i). <u>United States v. White</u>, 378 F. Supp.3 784, 785 (W.D. Mo. 2019).

6

## A.    The COVID-19 Argument

The "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the Bureau of Prison's statutory role, and extensive professional efforts to curtail the virus' spread. <u>United States v. Raia</u>, 954 F.3d 594, 597 (3rd Cir. 2020). In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, <u>inter alia</u>, the guidance of the CDC, and non-binding policy statements of the United States Sentencing Guidelines. <u>See</u> <u>United States v. Beck</u>, 425 F. Supp. 3d 573, 581-82 (M.D.N.C. 2019). The policy statements are not binding but are informative and may be considered. <u>United States v. McCoy</u>, 981 F.3d 271, 276 (4th Cir. 2020). The cases teach that, to constitute extraordinary and compelling reasons for compassionate release, medical conditions must be serious. Also, it is generally true that "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." <u>United States v. Ayon-Nunez</u>, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020).

To establish existence of "extraordinary and compelling" reasons for compassionate release because of COVID-19, the defendant must show "both a particularized susceptibility to the

7

disease and a particularized risk of contracting the disease at [his] prison facility." United States v. Feiling, 453 F. Supp.3d 832, 840 (E.D. Va. 2020); United States v. White, _____ F. Supp.3d _____, 2020 WL 1906845, at *1 (E.D. Va. April 23, 2020).

### 1.   Particularized Susceptibility

As was the case in his previously denied motion for compassionate release,[2] Diaz-Rios again asserts that he suffers from high blood pressure and obesity. And, that appears to be so. However, the fact that a defendant has established a higher susceptibility to COVID-19 does not resolve the particularized susceptibility requirement because identified risk factor conditions must be serious to constitute extraordinary and compelling reasons. It appears from the record that the conditions on which Diaz-Rios bases his motion are "chronic conditions that can be managed in prison [and thus] are not a sufficient basis for compassionate release." United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020).

Diaz-Rios has twice had COVID-19 (Worksheet in Response to Motion for Compassionate Release, p. 2) and has recovered with no

---

[2] The previous motion is the defendant's Motion Letter (ECF No. 141) as supplemented by ECF Nos. 146 and 153. The denial is a MEMORANDUM ORDER (ECF No. 158) that was affirmed by the United States Court of Appeals for the Fourth Circuit (ECF Nos. 189 and 190).

reported worsening of the blood pressure and obesity. Moreover, Diaz-Rios, like almost all inmates at FCI Gilmore, now has been fully vaccinated with the Pfizer-BioNTech vaccine. The vaccine has proven effective in reducing the risk of contracting COVID-19 and the risk of serious consequences if it should be contracted. That, indeed, is shown by Diaz-Rios' own history.

In sum, Diaz-Rios has not met the particularized susceptibility risk facet of the applicable test, insofar as his motion is based on the risks of COVID-19.

### 2. Particularized Facility Risk

Nor has Diaz-Rios met the particularized facility risk component of the appropriate test. His motion cites press releases and information respecting the instances of COVID-19 among inmates and staff at BOP facilities nationwide, but provides no real evidentiary support of a particularized risk of contracting the disease at FCI Gilmore, Diaz-Rios' facility of incarceration. However, the record reflects that, at the time of the filing of the Government's papers, FCI Gilmore had one active case of COVID-19 among inmates, one active case of COVID-19 among staff, and 302 inmates who had previously recovered from COVID-19. In addition, all inmates who have tested positive are being appropriately treated and isolated in accord with the appropriate CDC guidelines that have been adopted by the Bureau of Prisons.

9

On this record, Diaz-Rios has not met the particularized facility component of the applicable test.

**B.    The <u>McCoy Argument</u>**

As mentioned previously, the Counsel Motion is somewhat confusing in its theories; however, at its root, the Counsel Motion is based upon the decision of the Fourth Circuit in <u>United States v. McCoy</u>, 981 F.3d 271 (4th Cir. 2020).   Indeed, in the reply brief, the counsel states that Diaz-Rios' motion is "precisely the situation the Fourth Circuit confronted in <u>McCoy</u>." (ECF No. 218, p. 3).   The circumstances which forms the principal predicate for the <u>McCoy</u> argument arise from the decision in <u>United States v. Campbell</u>, 22 F.4th 438 (4th Cir. 2022) which held that career offender guidelines Section 4B.1 & 4B.2 do not apply to attempt convictions.   That, according to Diaz-Rios, is the same type of argument that Thomas McCoy made when he moved under § 3582(c)(1)(A) for a reduction in his sentence due to the disparity created by the amendment to 18 U.S.C. § 924(c) that eliminated stacked sentences for simultaneous convictions. (ECF No. 218, p. 4).   The Counsel Motion, as does the *Pro Se* Motion, also cites <u>United States v. Norman</u>, 935 F.3d 232, 239 (4th Cir. 2019) holding that a § 846 conspiracy is not categorically a controlled substance as defined in the career offender guidelines, §§ 4B.1 and 4B.2.

10

The Government's response does not adequately explain why the principles enunciated in McCoy should not be considered here. And, indeed, an examination of McCoy teaches that its principles are appropriately considered here.

It is necessary, therefore, to compare the circumstances in McCoy to the circumstances presented in this case. First, in McCoy, the district court granted relief (which the Fourth Circuit affirmed) based, in significant part, upon the youth of the defendant at the time of the offenses. Here, that factor has no applicability at all.

Second, in McCoy, the district court (as affirmed by the Fourth Circuit) was influenced also by the defendant's lack of significant prior criminal history. That is not the situation here. Unlike in McCoy, Diaz-Rios has an extensive criminal history and whether he is called a career offender or not, he is an undeterred, thrice-convicted drug dealer. And, he also has twice violated the immigration laws of the United States. After one of those immigration violations, he committed an aggravated felony.

Third, in McCoy, the district court found significant the defendant's exemplary behavior and rehabilitation in prison. Here, Diaz-Rios has been in prison since 2010 and he incurred disciplinary actions in 2015, 2018, and 2019. (ECF No. 212, p. 2). While Diaz-Rios makes no showing in respect of rehabilitation,

11

he does argue that he has "clean conduct for the past 29 months" (ECF No. 208, p. 6) and the Probation Officer reports that he has taken five educational classes between 2010 and 2018.  Those points count in favor of Diaz-Rios, but they certainly are neither extraordinary nor compelling.  Indeed, prisoners are expected to behave themselves in prison and to attempt to learn proper skills and to improve themselves while in prison.

Finally, the driving factor for the district court and the Court of Appeals in McCoy was the fact that, between the time of sentencing and the time of filing the motion for compassionate release, Congress had significantly changed the punishment provisions under 18 U.S.C. § 924(c) which, as in effect at the time of sentencing, resulted in a sentence of more than twice that to which the defendants would be exposed as they had been sentenced at the time the district court was considering the motion for compassionate release.  The analog in this case is that Diaz-Rios, if sentenced today, would no longer be eligible for treatment as a career offender.  The guideline range for Diaz-Rios at the time of sentencing was 262 to 327 months whereas today it would be 120 to 125 months imprisonment.  However, that is not dispositive because, now and at the time of sentencing, the statutory sentence would be ten years to life imprisonment.  And, that is significant in this case because the offense of conviction is extremely

serious, involving a great quantity of drugs by a man who is an undeterred drug dealer and an undeterred violation of the immigration laws. Thus, on this record, a change in the guidelines here is of far less significance to assessing a proper sentence than it was in McCoy.

That, then, brings us to an assessment whether the sentence is sufficient but not greater than necessary to accomplish the objectives of the sentencing factors and to that we will now turn.

## C. Assessment Under 18 U.S.C. § 3553(a)

An examination of the record counsels that the sentencing factors of 18 U.S.C. § 3553(a) do not favor the relief that Diaz-Rios seeks.

To begin, compassionate release is appropriate only when the defendant is not a danger to the safety of any other person or the community. Diaz-Rios asserts that "[he] is a non-violent offender who has never been accused of a crime involving violence." (ECF No. 208, p. 16). The Government does not really discuss the question of dangerousness *per se*. However, the offense of conviction here and Diaz-Rios' criminal history show a concerted pattern of engaging in the dangerous business of drug trafficking. Indeed, this case was the fourth time in ten years that Diaz-Rios had been convicted of such crimes. What is more, the sheer volume of the drugs in which Diaz-Rios trafficked necessitate acceptance

13

of the fundamental principle, universally accepted by the courts, that significant drug trafficking carries it with the risk of great danger to those who are involved in it and to those who are affected by it.

Accordingly, the Court cannot conclude that Diaz-Rios is not a danger notwithstanding his recent good behavior in prison and his efforts to rehabilitate himself which are outlined in the *Pro Se* Motion (ECF No. 218, pp. 15-16) and the probation officer's Worksheet in Response to Motion for Compassionate Release (ECF No. 212).   The Counsel Motion mentions that Diaz-Rios avoided disciplinary conduct for the last six months.   That is hardly significant evidence of rehabilitation.   It is certainly neither extraordinary nor compelling.   The Counsel Motion also asserts that Diaz-Rios works and has taken classes and is waiting entry into a number of recidivism prevention programs.   Those are laudable measures, but they are not extraordinary nor compelling.

Another factor asserted by Diaz-Rios that pertains to the § 3553(a) factors is the argument that he will be deported to return to Mexico after serving his prison time.   And, apparently, that is correct.   Diaz-Rios is no doubt eligible for deportation and the Court can see no reason why that would not occur given his history of illegally entering and thereby violating immigration laws of

this country and his criminal history while illegally within the country.

However, a review of the record shows that a lengthy prison sentence is necessary to protect the public from Diaz-Rios' immigration and drug trafficking crimes, to promote respect for the law, and to deter Diaz-Rios from once again illegally re-entering the country and, while here, consistently violating its drug laws. Previous extensions of leniency have not worked to protect the public, promote Diaz-Rios' respect for law or to deter him.

## CONCLUSION

The arguments about the difference in sentences occasioned by the change in law respecting the career offender status simply ignore the facts of Diaz-Rios' serious criminal activity and his serious criminal history. But, the statutory sentencing range is unchanged. Then, and now, the statutory range was ten years to life. Diaz-Rios now is approximately 47 years old. His scheduled release date is July 20, 2035 (ECF No. 212, p. 1). Diaz-Rios has served approximately half of the imposed sentence. Not one of the objectives of 18 U.S.C. § 3553(a) would be served by releasing him now (he seeks a sentence of time served) or by reducing the original sentence. For the offense of conviction (a most serious

15

crime) and, in perspective of his demonstrated criminal conduct over time, a sentence of twenty-seven years was, when imposed, sufficient but not greater than necessary to protect the public, promote respect for the law, and deter the defendant and others, and otherwise satisfy 18 U.S.C. § 3553(a). It remains so today, notwithstanding the difference between the applicable guidelines now and at sentencing. In the final analysis, Diaz-Rios, whether characterized as a career offender under the guidelines or not, utterly disregarded the immigration laws, and then persistently violated drug laws. Leniency did not deter him. Indeed, after being accorded remarkable leniency, he moved from trafficking in marijuana to trafficking in cocaine (ECF No. 204, ¶ 29) and when given a lenient sentence for that offense, he simply increased the quantity of his trafficking operation. In sum, Diaz-Rios earned the sentence imposed. He was fortunate that it was not greater.

Whatever else may be said, this record does not establish extraordinary and compelling circumstances warranting release or a reduction of the original sentence.[3]

For the reasons set forth above, it is hereby ORDERED that the defendant's *pro se* Motion for Compassionate Release (ECF No. 199) and the SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR

---

[3] The contention respecting service of the sentence during the pandemic is addressed in DISCUSSION, Section A.

SENTENCE REDUCTION PURSUANT TO § 603(b) OF THE FIRST STEP ACT AND 18 U.S.C. §§ 3582(c)(1)(A) (ECF No. 208) will be denied and the defendant's *pro se* Motion for Discovery (ECF No. 200) and the *pro se* Motion To Expand The Record And Motion To Continue (ECF No. 201) will be denied as moot.

It is so ORDERED.

_____ /s/    REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: October 24, 2022

17